UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARNOLD CARBAJAL and CESAR CARBAJAL, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>-against-<br><br>CLEARWAY INDUSTRIES, LLC, CUTTING EDGE LAWN SERVICES & LANDSCAPING, LLC and PERCY CARABALLO,<br><br>*Defendants*. | **CLASS ACTION COMPLAINT** |

Plaintiffs Arnold Carbajal ("Arnold") and Cesar Carbajal ("Cesar") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorney, Mohammed Gangat Esq., complaining of the defendants, Clearway Industries, LLC, ("Clearway") Cutting Edge Lawn Services & Landscaping, LLC ("Cutting Edge") and Percy Caraballo ("Carballo"), (collectively, "Defendants"), respectfully allege as follows:

### NATURE OF ACTION, JURISDICTION AND VENUE

1. This is an action seeking equitable and legal relief for Defendants' violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Laws §§ 190 *et seq.* and 650 *et seq.* ("NYLL"), and New York contract law, based on Defendants' breach of "Public Works Contracts" to which Plaintiffs are third party beneficiaries.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA and 26 U.S.C. § 7434.

3. This Court has supplemental jurisdiction over the claims arising under New York state law pursuant to 28 U.S.C. § 1367, in that the New York state law claims are so closely

related to Plaintiffs' federal claims as to form the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct business through their employees, including Plaintiffs, within this judicial district.

5. Plaintiff submits that as to the assignment of this case between the White Plains courthouse versus the Manhattan, the case is more properly assigned to the White Plains courthouse because all of the defendants reside in Orange County and the events giving rise to this action occurred in Bronx County, but also and more predominantly in counties north, including Orange, Westchester, and Rockland.

**PARTIES**

6. Plaintiffs are individuals residing in the State of New York.

7. At all relevant times, Plaintiffs were employed by Defendants.

8. While employed by Defendants, Plaintiffs were regularly engaged in interstate commerce and/or in the production of goods for commerce.

9. Plaintiffs are covered employees within the meaning of the FLSA and NYLL.

10. Defendant Clearway Industries, LLC is a business incorporated in the State of New Jersey, with its principal place of business at 2 Stage Road, Pine Island, NY 10969.

11. Defendant Cutting Edge Lawn Services & Landscaping, LLC is a business incorporated in the State of New Jersey, with its principal place of business at 2 Stage Road, Pine Island, NY 10969.

12. Defendant Percy Caraballo is an individual who resides in New York at 2 Stage Road, Pine Island New York

13. At all relevant times, Caraballo was the owner and/or manager of Clearway and Cutting Edge.

14. At all relevant times, Caraballo was and still are officers, directors, shareholders, owners, and/or persons in control of Clearway and Cutting Edge, who exercise significant control over Clearway and Cutting Edge's operations and had the authority to hire, fire, and discipline their employees; set employees' work schedules and conditions of employment; determine the rate and method of payment for employees; and maintain employment records.

15. At all relevant times, Defendants were responsible for setting Plaintiffs' schedules and day-to-day activities and for supervising their performance.

16. At all relevant times, Defendants had the power to discipline and terminate Plaintiffs.

17. At all relevant times, Defendants were responsible for compensating Plaintiffs.

18. Defendants are a single enterprise and/or joint employers as Defendants operate for the same business purpose and have common ownership and management.

19. Defendants are a single enterprise and/or joint employers, who jointly managed, supervised, hired, fired, and controlled the manner of pay of Plaintiffs, and are jointly and severally liable in this matter.

20. Defendants are covered employers within the meaning of the FLSA and the NYLL and, at all relevant times, employed Plaintiffs.

21. Upon information and belief, at all relevant times, Defendants' gross revenues were in excess of $500,000.00 per year.

22. Defendants operate in interstate commerce.

23. Defendants are subject to suit under the statutes alleged above.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

24. The First Cause of Action in this Complaint, which arises out of the FLSA, is brought by Plaintiffs on behalf of themselves and similarly situated persons who were employed during the relevant time period and who elect to opt-in to this action (the "FLSA Collective Plaintiffs").

25. The FLSA Collective Plaintiffs consist of no less than forty (40) similarly situated current and former employees of Defendants who, during their employment with Defendants, work or worked in excess of forty (40) hours per week and who were damaged due to Defendants' common policy and practices in violation of the FLSA including, *inter alia*, willfully denying them overtime wages.

26. As part of their regular business practices, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA Collective Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter alia*, failing to pay employees their overtime rates.

27. Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

28. Defendants' unlawful conduct has been intentional, willful, in bad faith, and has caused significant damages to Plaintiffs and the FLSA Collective Plaintiffs.

29. The FLSA Collective Plaintiffs would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and are locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

**ALLEGATIONS FOR STATE CONTRACT CLAIMS**

30. Upon information and belief, since March 2018, Defendants have entered into Public Works Contracts with government agencies or other contractors to perform construction-related work on the Public Works Projects.

31. The work performed by Plaintiffs on the Public Works Projects required the payment of statutory prevailing wages and supplemental benefits.

32. Upon information and belief, the Public Works Contracts required the payment of prevailing wages and supplemental benefits, in accordance with the applicable labor law (e.g., Labor Law § 220 and related federal laws), to individuals employed on Public Works Projects.

33. The prevailing rate of wages and benefits is the rate of wage paid in the locality by virtue of collective bargaining agreements between bona fide labor organizations and employers of the private sector.

34. New York Labor Law § 220 also requires that the laborers, workmen, and mechanics upon such public work be provided "supplemental benefits" at the prevailing rate. "Supplemental benefits" are all forms of remuneration for employment paid in any medium other than cash, including but not limited to health, welfare and non-occupational disability insurance, retirement and vacation benefits, holiday pay, and life insurance. The prevailing rate of supplemental benefits is determined in the same manner as wages. See New York Labor Law §220.

35. Upon information and belief, a schedule of prevailing rates of wages and supplemental benefits ("Prevailing Wage Schedule") to be paid was annexed to and made a part of the Public Works Contracts entered into by Defendants.

36. In furtherance of the Public Works Contracts, Plaintiffs performed landscaping, tree trimming, line clearing removal, and other construction-related work at the sites of the Public Works Projects.

37. Defendants paid the Plaintiffs less than the prevailing rates of wages and supplements to which the Named Plaintiff and other members of the putative class were entitled for all hours worked.

38. The promise to pay and ensure payment of the prevailing wage and supplemental benefit rates in the Public Works Contracts was made for the benefit of all workers furnishing labor on the sites of the Public Works Projects and, as such, the workers furnishing labor on the sites of the Public Works Projects are the beneficiaries of that promise.

### Arnold Carbajal

### Work Schedule and Rates of Pay

39. Defendants employed Arnold as a tree trimmer from in or around 2015 until in or around December 2022.

40. As a tree trimmer, Arnold's primary job duties included cutting and trimming trees.

41. Throughout his employment, Arnold regularly worked five (5) days per week, as follows: Mondays through Fridays from approximately 6:00 a.m. to approximately 5:00 p.m., usually with a paid daily thirty (30) minute lunch break, for a total of approximately fifty five (55) hours per week.

42. During the warmer seasons, such as spring and summer, Arnold also frequently worked on Saturdays and Sundays in addition to his regular schedule, from approximately 6:00 a.m. to approximately 5:00 p.m., usually with a paid daily thirty (30) minute lunch break, for a total of approximately seventy seven (77) hours per week total.

43. Throughout Arnold's employment, Defendants failed to adequately track his working hours and did not mandate him to keep a record of his time.

44. Defendants would consistently require Arnold to sign timesheets they completed themselves, consistently stating his work hours as 8:00 a.m. to 4:00 p.m. However, these timesheets failed to accurately reflect the roughly three additional hours Arnold worked daily.

45. From the beginning of the relevant time period until approximately 2021, Arnold received $38.00 per hour plus $12 for all hours worked, including those hours worked over forty (40) per week. When he worked on Saturdays his rate would increase to $75.00 per hour, and when he worked Sundays his rate would increase to $90.00 per hour.

46. From the beginning of approximately 2021 until the end of his employment, Arnold received $45.50 per hour plus $12 for hours worked including those hours worked over forty (40) per week. He did not receive an increase in his pay rate when he worked Saturdays and/or Sundays, nor did he receive any increase when working holidays or shifts in excess of 8 hours in length.

47. Arnold also regularly received payments for his hours outside of the regular payment schedule, resulting in him being paid straight time rates for hours, when in fact those hours were overtime hours that belonged in a prior pay period.

## Cesar Carbajal

## Work Schedule and Rates of Pay

48. Defendants employed Cesar as a tree trimmer from in or around 2015 until in or around December 2022.

49. As a tree trimmer, Cesar's primary job duties included cutting and trimming trees.

50. Throughout his employment, Cesar regularly worked five (5) days per week, as follows: Mondays through Fridays from approximately 6:00 a.m. to approximately 5:00 p.m., usually with a paid daily thirty (30) minute lunch break, for a total of approximately fifty five (55) hours per week.

51. During the warmer seasons, such as spring and summer, Cesar also frequently worked on Saturdays and Sundays in addition to his regular schedule, from approximately 6:00 a.m. to approximately 5:00 p.m., usually with a paid daily thirty (30) minute lunch break, for a total of approximately seventy seven (77) hours per week total.

52. Throughout Cesar's employment, Defendants failed to adequately track his working hours and did not mandate him to keep a record of his time.

53. Defendants would consistently require Arnold to sign timesheets they completed themselves, consistently stating his work hours as 8:00 a.m. to 4:00 p.m. However, these timesheets failed to accurately reflect the roughly three additional hours Cesar worked daily.

54. From the beginning of the relevant time period until approximately 2019, Cesar received $38.00 per hour plus $12 for all hours worked, including those hours worked over forty (40) per week. When he worked on Saturdays his rate would increase to $75.00 per hour, and when he worked Sundays his rate would increase to $90.00 per hour.

55. From the beginning of approximately 2019 until the end of his employment, Cesar received $46.00 per hour plus $14 for all hours worked including those hours worked over forty (40) per week. He did not receive an increase in his pay rate when he worked Saturdays and/or Sundays but not always. Cesar also regularly received payments for his hours outside of the regular payment schedule, resulting in him being paid straight time rates for hours, when in fact those hours were overtime hours that belonged in a prior pay period. Cesar did not receive required overtime pay when he worked shifts in excess of ten hours per day.

**RETALIATION**

56. In or around October of 2022, Cesar was in a car accident and damaged one of the Defendants' vehicles.

57. Cesar promised to pay any damages and was subsequently reinstated to his position without any reprimand for the accident. Moreover, Caraballo conveyed in a text message that there were no lingering issues between them concerning the incident.

58. Cesar worked for approximately three weeks and one day after he returned to work but was not paid for his work. When he raised this issue with Caraballo he was told that he could not get paid at this time.

59. Defendants terminated Cesar's employment shortly after his request to get paid for the work he did.

60. Defendants unlawfully retaliated against Cesar by terminating his employment for requesting his unpaid wages.

## CLASS ACTION ALLEGATIONS

61. At all relevant times, Plaintiffs and the Putative Class were non-exempt employees pursuant to the FLSA and the NYLL and were entitled to overtime compensation.

62. This action is properly maintainable as a class action pursuant to Rule 23.

63. This action is brought on behalf of the Named Plaintiffs and a class consisting of each person who worked performing landscaping, tree trimming, line clearing removal, and other construction-related trades for Defendants from the date six years preceding the filing of the complaint through the date of judgment.

64. The putative class of individuals employed by the Defendants is so numerous that joinder of all members is impracticable. The size of the putative class is believed to be in excess of forty (40) individuals. In addition, the names of all potential members of the putative class are not known.

65. The questions of law and fact common to the putative class predominate over any questions affecting only individual members.

66. The claims of the Named Plaintiffs are typical of the claims of the putative class.

67. The Named Plaintiffs and their counsel will fairly and adequately protect the interests of the putative class.

68. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

69. Plaintiffs and class members were subject to the same class wide policies of mandating employees sign incorrect time sheets.

70. Plaintiffs and class members were subject to the same class wide policies of not being paid for all hours worked and only being paid for on the manipulated time sheets.

71. Despite routinely working in excess of forty (40) hours per week, Plaintiffs and the FLSA the Class were not paid overtime compensation of one and one-half (1.5) times their regular hourly rate or the applicable minimum wage rate, whichever is greater, for the hours they worked in excess of forty (40) per week.

72. Defendants further failed to furnish to Plaintiffs a payroll notice at the time of their hire, or at any time thereafter, containing Plaintiffs' rates of pay, the designated payday, or other information required by NYLL § 195(1).

73. Defendants also failed to furnish to Plaintiffs, with each wage payment, an accurate statement listing Plaintiffs' regular and overtime rates of pay and the number of regular and overtime hours worked, or any other information required by NYLL § 195(3).

74. Defendants violated federal and state law by willfully failing to pay Plaintiffs and the FLSA Collective Plaintiffs overtime compensation; by failing to pay Plaintiffs the applicable prevailing wages and supplemental benefits; by failing to timely pay Plaintiffs their full amount of wages every week; and by failing to provide Plaintiffs with the required payroll notices and wage statements.

## FIRST CAUSE OF ACTION
### *AGAINST ALL DEFENDANTS*
FLSA UNPAID OVERTIME

75. Plaintiff alleges and incorporates by reference all allegations in all preceding paragraphs.

76. Defendant employed Plaintiff and persons similarly situated to Plaintiff for workweeks longer than forty (40) hours and willfully failed to compensate the Plaintiff for the time worked in excess of forty (40) hours per week, at a rate of at least one and one-half times the regular hourly rate, in violation of the FLSA.

77. Defendant's violations of the FLSA, as described in this Complaint, have been willful and intentional.

78. As a result of Defendant' unlawful acts, Plaintiff and persons similarly situated to Plaintiffs are entitled to recover overtime compensation and other wages in amounts to be determined at trial, liquidated damages, attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### *AGAINST DEFENDANTS CLEARWAY AND CUTTING EDGE*
BREACH OF CONTRACT

79. Plaintiffs repeat and re-allege the allegations set forth in all paragraphs above.

80. Upon information and belief, Clearway and Cutting Edge entered into one or more Public Works Contracts to perform work in New York as well in the surrounding region.

81. On information and belief each Public Works Contract referenced or contained schedules of the prevailing rates of wages and supplemental benefits to be paid to the Named Plaintiff and the other members of the putative class.

82. Those prevailing rates of wages and supplemental benefits were made a part of each Public Works Contract for the benefit of the Named Plaintiff and the other members of the putative class.

11

83. Clearway and Cutting Edge breached the Public Works Contracts by failing to ensure that the Named Plaintiff and the other members of the putative class were paid the prevailing rates of wages and supplemental benefits for all labor performed upon the Public Works Projects.

84. By reason of its breach of each Public Works Contract, Defendants Cutting Edge and Clearway are liable to the Named Plaintiffs and other members of the putative class in an amount to be determined at trial, plus interest, costs and attorneys' fees.

**THIRD CAUSE OF ACTION**
*AGAINST ALL DEFENDANTS*
NY LABOR LAW OVERTIME COMPENSATION

85. In violation of New York Labor Law § 655 and 12 NYCRR § 142-3.2, Defendants failed to pay the Named Plaintiff and the other members of the putative class their statutorily required overtime compensation for the work that they performed in excess of forty (40) hours in a consecutive seven day week.

86. By the foregoing reasons, the Defendants are liable to the Named Plaintiff and the other members of the putative class in an amount to be determined at trial, plus interest, attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
*AGAINST ALL DEFENDANTS*
FAILURE TO PAY WAGES

87. Plaintiffs repeat and re-allege the allegations set forth in the paragraphs above.

88. The prevailing wages, supplemental benefits, and overtime compensation not paid to the Named Plaintiff and the other members of the putative class were wages within the meaning of New York Labor Law §§ 190, 198, and 198(1-a).

89. The Defendants violated New York Labor Law § 191 by failing to timely pay to the Named Plaintiff and the other members of the putative class the statutorily and contractually

required prevailing wages, supplemental benefits, and overtime compensation for the work they performed.

90. By reason of the foregoing, Defendants Are liable to the Named Plaintiff and the other members of the putative class in an amount to be determined at trial, plus interest, attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
*AGAINST ALL DEFENDANTS*
RETALIATION – NYLL SECTION 215

91. Plaintiff realleges and re-avers each and every allegation and statement contained in the above paragraphs of the Complaint as if fully set forth herein.

92. After Plaintiff filed an action against Defendant for his unpaid wages and failure to provide wage notice and wage statements, Defendant retaliated against Plaintiff by asking other people to file false police reports against Plaintiff and offering money and other things of value in exchange.

93. As a direct and proximate result of Defendant's unlawful retaliation in violation of NYLL § 215 (1)(a) and NYLL § 215(2)(a), Plaintiff has suffered and continues to suffer mental anguish, emotional distress, loss of enjoyment of life, damages to her reputation, loss of job security, loss of employment, and loss of wages, incurring damages thereby.

94. Defendant's unlawful and retaliatory actions constitute malicious, willful, and wanton violations of the, for which Plaintiff is entitled to an award of liquidated damages.

**SIXTH CAUSE OF ACTION**
*FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS*
NYLL SECTION 195

95. Plaintiff realleges and re-avers each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

96. Defendants have willfully failed to supply Plaintiff with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

97. Through Defendants' knowing or intentional failure to provide Plaintiff with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

98. Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of NYLL § 661.

99. Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the NYLL § 194(4), and New York State Department of Labor Regulations 12 NYCRR Section 142 and/or 146.

100. Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiff is entitled to statutory penalties of two hundred fifty (250) dollars for each workweek that Defendants failed to provide Plaintiff with accurate wage statements, or a total of five thousand (5,000) dollars, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

## **JURY TRIAL DEMANDED**

Plaintiff requests a trial by jury.

**PRAYER FOR RELIEF**

**WHEREFORE**, PlaintiffS, individually and on behalf of all other similarly situated persons, prays for the following relief:

A. Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under Fair Labor Standards Act and the supporting regulations and the New York Labor Law, Article 19, § 650 et seq., and the supporting New York State Department of Labor Regulations;

B. Certification of a Collective Action pursuant to 29 U.S.C. § 216(b);

C. Unpaid wages and an additional and equal amount as liquidated damages pursuant to 29 U.S.C. § 201 *et seq.* and the supporting United States Department of Labor regulations;

D. Certification of a Class Action pursuant to Fed. R. Civ. P. 23;

E. Designation of Plaintiffs as representatives of the Class and counsel of record as Class Counsel;

F. Unpaid wages for breach of contract and pursuant to New York Labor Law, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, plus liquidated damages and pre- and post-Judgment interest;

G. For Plaintiff Cesar's retaliation claim, compensatory damages including backpay, frontpay, emotional distress and all other compensable injuries, plus statutory damages in the maximum amount allowed for by law, and an award of prevailing party attorneys' fees and costs;

H. Reasonable attorneys' fees incurred in prosecuting these claims;

I. Costs and expenses incurred in prosecuting these claims;

15

J.  Pre-judgment and post-judgment interest as permitted by law; and

K.  Such other relief as this Court deems just and proper.

Dated: New York, New York　　　　　　　**LAW OFFICE OF MOHAMMED GANGAT**
　　　　May 8, 2024

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Mohammed Gangat, Esq.
　　　　　　　　　　　　　　　　　　　　675 Third Avenue, Suite 1810
　　　　　　　　　　　　　　　　　　　　New York, NY 10017
　　　　　　　　　　　　　　　　　　　　718-669-0714
　　　　　　　　　　　　　　　　　　　　mgangat@gangatpllc.com